**James N. BARNES, Plaintiff–Appellee,**

v.

**VAN SCHAACK MORTGAGE, A DIVISION OF VAN SCHAACK AND COMPANY, Defendant–Appellant.**

**No. 88CA0404.**

Colorado Court of Appeals,
Div. IV.

Jan. 11, 1990.

Holland & Hart, Roger D. Hunt and Raymond P. Micklewright, Colorado Springs, for plaintiff-appellee.

Braden, Frindt & Krall, P.C., Ralph A. Braden, Colorado Springs, for defendant-appellant.

Opinion by Judge HUME.

Defendant, Van Schaack Mortgage, appeals from the trial court's judgment awarding plaintiff, James N. Barnes, commissions on loans which closed after his termination from employment together with his attorney fees pursuant to § 8-4-114, C.R.S. (1986 Repl.Vol. 3B). We reverse.

Barnes was employed by Van Schaack Mortgage as a loan originator. His duties included contacting potential customers, helping them fill out loan applications, and sending completed applications to a loan processor for review. The applications were then forwarded to an underwriting committee for final approval or rejection. Following final approval of an application, a loan closing was then scheduled for those applicants who ultimately elected to borrow money from defendant.

Pursuant to a Loan Origination Incentive Agreement (incentive agreement), Barnes' compensation included an origination incentive fee (commission) based on the amount of loans which had closed during the year. The incentive agreement included the following provisions:

"Should Mr. Barnes terminate his employment [with defendant] the Incentive Schedule will be adjusted as follows:

a. For loans which are approved prior to the effective date of termination, Mr. Barnes will receive an origination fee in keeping with the Incentive Schedule above, provided such loans close before the end of the calendar month in which termination occurs.

b. For loans which are not approved prior to effective date of termination, Mr. Barnes will receive 50% of the origination fee called for in the Incentive Schedule, again provided such

loans close before the end of the month in which termination occurs.

c. In any event, Mr. Barnes will not receive origination fees for loans, whether approved or not, which close subsequent to the last day of the month in which termination occurs."

Barnes' employment as a loan originator was terminated on June 24, 1986. Relying on the above provisions, defendant refused to pay Barnes any commissions on loans he originated before his termination but which were closed after June 30, 1986. Barnes brought this action seeking to recover such commissions.

The trial court determined that the quoted provisions of the incentive agreement violated § 8–4–125, C.R.S. (1986 Repl.Vol. 3B) of the Wage Claim Act. It reasoned that since the Wage Claim Act confers upon employees the right to earned and unpaid compensation, an agreement purporting to forfeit such rights is unenforceable. Alternatively, the court determined that the contractual provisions for forfeiture of commissions are ambiguous and are unenforceable for that reason.

## I.

Defendant first contends that the trial court erred in determining that the forfeiture provision is ambiguous and thus unenforceable. We agree.

■ Whether a written instrument is inherently ambiguous is a question of law to be determined by the court, and we are not bound by the trial court's findings or conclusions as to that issue. *Buckley Brothers Motors, Inc. v. Gran Prix Imports, Inc.*, 633 P.2d 1081 (Colo.1981).

■ In ascertaining whether provisions of a written agreement are ambiguous, the instrument's language must be examined in accord with the plain and generally accepted meaning of the words used. *Radiology Professional Corp. v. Trinidad Area Health Ass'n*, 195 Colo. 253, 577 P.2d 748 (1978).

■ Extrinsic evidence and presumptive rules in aid of construction may be used only if the instrument itself is ambiguous, unclear, or uncertain as to the meaning the parties intended by it. *Pepcol Manufacturing Co. v. Denver Union Corp.*, 687 P.2d 1310 (Colo.1984).

■ Here, the agreement states in clear and unequivocal language that plaintiff is not entitled to receive incentive fee commissions on loan applications that he took but that did not result in loan closings within the month when his employment terminated.

We conclude the agreement is clear, unequivocal, and unambiguous on its face and, thus, must be enforced as written. *See Fontius Shoe Co. v. Lamberton*, 78 Colo. 250, 241 P. 542 (1925).

## II.

■ We also agree with defendant that the trial court erred in determining that the forfeiture provision of the incentive agreement was void under § 8–4–125, C.R.S. (1986 Repl.Vol. 3B).

That statute is included within a comprehensive statutory scheme, the Wage Claim Act, designed to require employers to make timely payment of compensation earned by their employees. *See* §§ 8–4–101 through 8–4–126, C.R.S. (1986 Repl.Vol. 3B); *Jet Courier Service, Inc. v. Mulei*, 771 P.2d 486 (Colo.1989); *Lee v. Great Empire Broadcasting, Inc.*, (Colo.App. No. 88CA-0853, December 7, 1989).

The Wage Claim Act, under the circumstances here, applies only to compensation that has been earned under the employment agreement. *See* §§ 8–4–101(9) and 104(1), C.R.S. (1986 Repl.Vol. 3B). It does not apply to compensation not yet fully earned under the parties' employment agreement. *Lee v. Great Empire Broadcasting, Inc., supra;* § 8–4–104(2), C.R.S. (1986 Repl.Vol. 3B).

Under the Wage Claim Act, compensation is earned if it is vested pursuant to an employment agreement at the time of an employee's termination. *See Rohr v. Ted Neiters Motor Co.*, 758 P.2d 186 (Colo.App. 1988).

The Wage Claim Act does not itself create any substantive right to compensation for labor and services performed. Rather, it establishes minimal requirements concerning when and how *agreed* compensation must be paid and provides remedies and penalties for an employer's noncompliance with those requirements. The employee's substantive right to compensation and the conditions that must be satisfied to earn such compensation remain matters of negotiation and bargaining, and are determined by the parties' employment agreement, rather than by the statute.

Here, the parties' employment agreement expressly and unequivocally provides that plaintiff is entitled to incentive fee commissions only if he generated loan applications that resulted in loan closures during the calendar month when his employment terminates.

Thus, we conclude that plaintiff did not earn incentive fee compensation under the employment agreement for loans that closed after June 30, 1986, and hence, he did not waive or modify any rights conferred under the Wage Claim Act in contravention of § 8–4–125.

The judgment is reversed.

SMITH and PLANK, JJ., concur.