The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
June 27, 2019

## 2019COA98

**No. 18CA1154, *Nieto v. Clark's Market* — Labor and Industry —
Colorado Wage Claim Act — Wages — Vacation Pay — Payments
Required on Termination of Employment — Nonwaiver of
Employee Rights**

A division of the court of appeals addresses whether an

employment agreement that says an employee is not entitled to

payment for accrued but unused vacation time if she is fired or fails

to give two weeks' notice violates the Colorado Wage Claim Act

(CWCA). In holding that it does not, the division recognizes that the

CWCA does not create a substantive right to payment for accrued

but unused vacation time under section 8-4-101(14)(a)(III), C.R.S.

2018. Rather, an employee's right to compensation for accrued but

unused vacation pay depends on the parties' employment

agreement. Agreements conditioning an employee's right to

compensation for accrued but unused vacation time do not run afoul of the CWCA's anti-waiver provision, section 8-4-121, C.R.S. 2018, which protects only against waiver of rights conferred by the CWCA.

COLORADO COURT OF APPEALS **2019COA98**

Court of Appeals No. 18CA1154
Pitkin County District Court No. 18CV8
Honorable Denise K. Lynch, Judge

Carmen Nieto,

Plaintiff-Appellant,

v.

Clark's Market, Inc.,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE J. JONES
Lipinsky and Martinez*, JJ., concur

Announced June 27, 2019

Albrechta & Albrechta, LLC, Eleni K. Albrechta, David T. Albrechta, Durango, Colorado, for Plaintiff-Appellant

Bechtel Santo & Severn, Michael C. Santo, Alicia W. Severn, Grand Junction, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1    Carmen Nieto appeals the district court's judgment dismissing her claim for vacation pay against her former employer, Clark's Market, Inc. (the Market). The issue before us is whether the Market's policy saying that an employee isn't entitled to payment for unused vacation time if the Market discharges her or if she voluntarily quits without giving two weeks' notice violates the Colorado Wage Claim Act (CWCA). We hold that it does not, and so we affirm the district court's judgment.

## I.    Background

¶ 2    While working for the Market, Ms. Nieto accrued vacation time pursuant to the vacation policy in the Market's employee handbook. That policy explains how vacation time accrues, how (and when) it can be used, and whether and under what circumstances employees are entitled to payment for accrued but unused vacation time when they leave employment. As to the latter, the policy says that an employee is entitled to payment for accrued but unused vacation time if she voluntarily resigns and gives at least two weeks' notice; but if the Market discharges an employee for any reason or for no reason or if the employee fails to give two weeks' notice before quitting, the employee "forfeits all earned vacation pay benefits."

1

When the Market discharged Ms. Nieto, it refused to pay her for vacation time she had accrued but hadn't used, pointing to the vacation policy.[1]

¶ 3    Ms. Nieto sued, seeking payment for accrued vacation time and alleging that the Market's vacation forfeiture policy violates sections 8-4-101(14)(a)(III) and 8-4-121, C.R.S. 2018, of the CWCA because it denies her payment for earned wages. The Market moved to dismiss her complaint under C.R.C.P. 12(b)(5) for failure to state a claim. The district court granted that motion, concluding that the CWCA "clearly and unambiguously gives employers the right to enter into agreements with its employees regarding vacation pay."

---

[1] Ms. Nieto alleged that the Market's policy governing vacation pay is an employment agreement. For purposes of moving to dismiss, the Market didn't dispute that allegation. And the parties' briefs on appeal expressly assume the policy is an agreement. We don't venture any opinion on whether the policy in the Market's handbook constitutes an "agreement" as contemplated by the CWCA, but merely assume that it does because of the procedural posture of the case.

2

## II. Discussion

¶ 4 Ms. Nieto contends that the district court misconstrued the CWCA in determining that she didn't state a plausible claim for relief. Her argument, at its core, is that section 8-4-121 voids the Market's policy requiring employees to voluntarily resign and give two weeks' notice to be eligible to receive payment for accrued but unused vacation time. This is so, she says, because she has a right to payment for such vacation time under sections 8-4-101(14)(a)(III) and -109(1)(a), C.R.S. 2018. This case therefore turns on our interpretation of these provisions of the CWCA.

### A. Standard of Review and Interpretive Principles

¶ 5 We review de novo an order granting a motion to dismiss. *See Norton v. Rocky Mountain Planned Parenthood, Inc.*, 2018 CO 3, ¶ 7. A court properly grants a C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim where the complaint's factual allegations, taken as true and viewed in the light most favorable to the plaintiff, don't present plausible grounds for relief. *See id.*; *Begley v. Ireson*, 2017 COA 3, ¶ 8.

¶ 6 We also review issues of statutory interpretation de novo. *Colo. Oil & Gas Conservation Comm'n v. Martinez*, 2019 CO 3, ¶ 19.

3

¶ 7     In interpreting a statute, we look to the language of the statute and apply the plain and ordinary meanings of the words and phrases used therein. *Id.* "We do not add or subtract words from the statute[.]" *City & Cty. of Denver v. Dennis*, 2018 CO 37, ¶ 12. And, we consider the entire statutory scheme to give "consistent, harmonious, and sensible effect to all of its parts." *Id.* If the statutory language is clear and unambiguous, we apply it as written and our analysis stops there. *Id.*

## B.     Applicable Law

¶ 8     The CWCA says that when an employer discharges an employee, "the wages or compensation for labor or service earned, vested, determinable, and unpaid at the time of such discharge is due and payable immediately." § 8-4-109(1)(a). Section 8-4-101(14)(a)(III) explicitly includes vacation pay in the definition of wages:

> "Wages" or "compensation" means:
>
> . . .
>
> (III) Vacation pay earned in accordance with the terms of any agreement. If an employer provides paid vacation for an employee, the employer shall pay upon separation from employment all vacation pay earned and

> determinable in accordance with the terms of any agreement between the employer and the employee.

But "[n]o amount is considered to be wages or compensation until such an amount is earned, vested, and determinable."

§ 8-4-101(14)(a)(I); *see Hernandez v. Ray Domenico Farms, Inc.*, 2018 CO 15, ¶ 9 (applying this limitation to vacation pay under subsection (14)(a)(III)).[2]

---

[2] The General Assembly changed and added to the definition of "'[w]ages' or 'compensation'" significantly in 2003. Ch. 286, sec. 1, § 8-4-101(8)(a), 2003 Colo. Sess. Laws 1852. Among other things, it added the "earned, vested, and determinable" language to subsection (14)(a)(I), and thereby essentially codified a part of *Hartman v. Freeman*, 197 Colo. 275, 279, 591 P.2d 1318, 1321 (1979), by explicitly including vacation pay in the definition. *See id.* at 279, 591 P.2d at 1321 ("[V]acation pay [—] like wages [—] is *both vested and determinable* as of the date of termination.") (emphasis added). It isn't clear, however, why the General Assembly chose to use the language "earned, vested, and determinable" in section 8-4-101(14)(a)(I), C.R.S. 2018 (general definition of wages), and in section 8-4-109(1)(a), C.R.S. 2018 (termination provision), but excluded the word "vested" from the vacation pay provision, section 8-4-101(14)(a)(III). *See Hernandez v. Ray Domenico Farms, Inc.*, 250 F. Supp. 3d 789, 800 n.9 (D. Colo. 2017) (describing this, and other, idiosyncrasies of the CWCA in detail). Regardless, these arguably questionable drafting choices don't create any ambiguity with respect to the issue before us.

¶ 9     Section 8-4-121 provides that "[a]ny agreement, written or oral, by any employee purporting to waive or to modify such employee's rights in violation of this article shall be void."

C.    Analysis

¶ 10     Ms. Nieto argues that her accrued vacation pay was earned and determinable under section 8-4-101(14)(a)(III), the Market therefore owed her for that time according to section 8-4-109(a)(1), and the Market's forfeiture policy purporting to deprive her of payment for that time is, under section 8-4-121, an illegal waiver of her right to payment.  Her argument, however, misconstrues the applicable provisions of the CWCA.

¶ 11     Nothing in the CWCA creates a substantive right to payment for accrued but unused vacation time.  Rather, "the employee's substantive right to compensation and the conditions that must be satisfied to earn such compensation remain matters of negotiation and bargaining, and are determined by the parties' employment agreement, rather than by the statute."  *Barnes v. Van Schaack Mortgs.*, 787 P.2d 207, 210 (Colo. App. 1990); *see* § 8-4-101(14)(a)(III) (including vacation pay in the definition of wages or compensation if "earned in accordance with the terms of any

6

agreement" and if "earned and determinable in accordance with the terms of any agreement between the employer and the employee"). Put another way, the CWCA merely "establishes minimal requirements concerning when and how *agreed* compensation must be paid[.]" *Barnes*, 787 P.2d at 210. The question, then, whether particular compensation is "earned, vested, [and] determinable," and therefore due on termination, *see* § 8-4-109(1)(a), depends on the terms of the parties' agreement, *see Hernandez*, ¶ 12 (When read together, sections 8-4-101 and -109 "demonstrate that the General Assembly understood that certain categories of wages or compensation — such as unused vacation time . . . — would not be available until separation because they may not become 'vested' or 'determinable' *under the employment agreement* until that time.") (emphasis added).

¶ 12    In this case, the parties' agreement conditioned payment for accrued but unused vacation time. Ms. Nieto does not allege that she met those conditions. She therefore did not assert a plausible claim that an agreement with the Market entitles her to payment for accrued but unused vacation time.

¶ 13    The anti-waiver statute, section 8-4-121, doesn't save her claim. That statute prohibits waiver of an employee's "rights in violation of [the CWCA]." *Id.* It doesn't create any substantive entitlement to payment independent of the parties' agreement; it only applies to rights conferred by the CWCA. *Barnes*, 787 P.2d at 210. And, as discussed, the CWCA looks to the parties' agreement as the sole potential source of any substantive right to payment.

¶ 14    Our conclusion finds support in *Barnes*. In that case, a division of this court concluded that the CWCA didn't entitle the plaintiff to payment for loans he originated that closed in the month following his termination because an employment agreement "expressly and unequivocally provide[d] that [the] plaintiff [was] entitled to incentive fee commissions only if he generated loan applications that resulted in loan closures during the calendar month when his employment terminate[d]." *Id.* The division held that this forfeiture provision didn't violate the CWCA because the plaintiff hadn't fully earned the compensation under the employment agreement. *Id.*; *cf. Gomez v. Children's Hosp. Colo.*, No. 18-CV-00002-EH, 2018 WL 3303306, at *6 (D. Colo. July 8, 2018) (unpublished order) (employment agreement's provision saying that

employees "forfeit" illness leave pay if they have less than fifteen years of service and/or 650 hours of illness leave "on the date of termination" is enforceable and does not violate the CWCA); *Cheyenne Mountain Sch. Dist. No. 12 v. Thompson*, 861 P.2d 711, 713-16 (Colo. 1993) (treating as enforceable a contractual provision denying pay for unused vacation when the employee is terminated without cause).

¶ 15    Courts in other jurisdictions applying similar wage payment statutes have likewise upheld conditional payment provisions pertaining to vacation pay.  For instance, in *Lee v. Fresnius Medical Care, Inc.*, 741 N.W.2d 117, 126 (Minn. 2007), the court reasoned that because vacation pay is "wholly contractual," "employers are permitted to set conditions that employees must meet in order to exercise their earned right to vacation time with pay."  The employee policy in that case said that terminated employees aren't eligible to receive payment for "earned but unused Paid Time Off." *Id.* at 120.  The court concluded that the policy was valid because the legislature had not intended to create a substantive right to vacation pay.  *Id.* at 126.  Instead, the statute saying that wages "actually earned and unpaid" are due at the time of termination was

a timing statute that mandated when, not what, an employer must pay a terminated employee. *Id.* at 125. Because the employee didn't meet the employment contract condition, she wasn't entitled to payment in lieu of paid time off. *Id.*

¶ 16    And in *Indiana Heart Associates, P.C. v. Bahamonde*, 714 N.E.2d 309, 311 (Ind. Ct. App. 1999), the court considered a policy saying that an employee is ineligible for payment for accrued paid time off if the employee is "involuntarily terminated" for unsatisfactory work, gross misconduct, or violation of any rule. The court held that this policy was valid under Indiana's Wage Payment Statute: "[A]n employee's right to vacation pay under the statute is not absolute. Rather, an employee is entitled to her accrued vacation pay to the time of termination 'provided no agreement or published policy exist[s] to the contrary.'" *Id.* at 311-12.

¶ 17    In sum, reading sections 8-4-101(14)(a)(III), -109(a), and -121 together, we hold that the Market's unused vacation policy doesn't violate the CWCA. Ms. Nieto's right to compensation for accrued but unused vacation pay depends on the parties' employment agreement. And that agreement unequivocally says that the

vacation pay she seeks wasn't vested given the circumstances under which she left the Market's employ.

## III.   Conclusion

¶ 18    We affirm the judgment.

JUDGE LIPINSKY and JUSTICE MARTINEZ concur.